# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RUBEN NEVAREZ,<br><br>Petitioner,<br><br>v.<br><br>ROD GODWIN and MATTHEW RODRIGUEZ,<br><br>Respondents. | Case No. 21-cv-1040-MMA-SBC<br><br>**ORDER ADOPTING REPORT AND RECOMMENDATION AND DENYING PETITION FOR WRIT OF HABEAS CORPUS**<br><br>[Doc. No. 29] |

Ruben Nevarez ("Petitioner") seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. *See* Doc. No. 1. The matter was referred to United States Magistrate Judge Karen S. Crawford for preparation of a Report and Recommendation pursuant to Title 28 of the United States Code, section 636(b)(1) and Civil Local Rule HC.2. On May 19, 2023, Judge Crawford[1] issued a Report and Recommendation, recommending that the Court deny the Petition in its entirety. *See* Doc. No. 29 ("R&R"). For the reasons set forth below, the Court **ADOPTS** the R&R, **DENIES** the Petition, and **DECLINES** to issue a certificate of appealability.

---

[1] The case has since been reassigned to United States Magistrate Judge Steve B. Chu. *See* Doc. No. 31.

## I. Procedural Background

Petitioner filed the Petition on May 28, 2021. *See* Doc. No. 1. On June 3, 2021, the Court denied Petitioner's request to proceed in forma pauperis ("IFP") and dismissed the Petition without prejudice for failure to pay the filing fee. *See* Doc. No. 3. Petitioner subsequently paid the filing fee, and the case was reopened. *See* Doc. No. 4.

On November 1, 2021, Respondents Rod Godwin and Matthew Rodriguez responded to the Petition and lodged the state court record. *See* Doc. Nos. 11, 12. On November 22, 2021, Petitioner filed a Notice of Appeal, *see* USCA Case No. 21-56280, seeking to appeal from "the Judgment of the Court denying the petition for writ of habeas corpus and dismissing with prejudice," entered on "Nov. 1, 2021, by Honorable Ruth Montenegro, U.S. District Judge."[2] Doc. No. 15 ("First Appeal"). After the Ninth Circuit dismissed the First Appeal, *see* Doc. No. 17, the Court set a May 6, 2022 deadline for Petitioner to file a traverse, *see* Doc. No. 20. Petitioner did not file a traverse. Rather, on June 6, 2022, Petitioner filed a second Notice of Appeal, *see* USCA Case No. 22-55578, seeking to appeal from "the Judgment of the Court denying the petition for writ of habeas corpus and dismissing with prejudice," entered on "April 05, 2022, by Honorable Andrew G. Schopler, U.S. District Judge."[3] Doc. No. 21 ("Second Appeal"). Petitioner simultaneously submitted a motion to proceed IFP.[4] *See* Doc. No. 22. On June 16, 2022, the Ninth Circuit dismissed the Second Appeal. *See* Doc. No. 25.

On May 19, 2023, Judge Crawford issued an R&R, recommending that the Court dismiss the Petition. *See* Doc. No. 29. Objections were originally due no later than June

---

[2] Judge Montenegro was a Magistrate Judge in November 2021. Judge Montenegro did not issue any orders on November 1, 2021, and never dismissed the Petition with prejudice. *See* Docket.

[3] Judge Schopler was a Magistrate Judge in April 2022. On April 5, 2022, Judge Schopler did not dismiss the Petition with prejudice, rather he set the deadline to file a traverse. *See* Doc. No. 20. Judge Schopler never dismissed the Petition with prejudice. *See* Docket.

[4] Because Petitioner had already paid the filing fee, and it appeared Petitioner's IFP request related to his Second Appeal, *see* Doc. No. 24, the Court administratively terminated the motion after the Court received the Ninth Circuit's mandate, dismissing the Second Appeal.

20, 2023. *See id.* at 9. Petitioner did not timely file an objection. Nonetheless, based upon Petitioner's June 5, 2023 notice of change of address, *see* Doc. No. 30 (noting that the letter was Petitioner's third attempt to notify the Court that he moved prisons), the Court ordered the Clerk's Office to send Petitioner a copy of the R&R at his new address, and reset the objections deadline to August 11, 2023. *See* Doc. No. 32. Rather than file an objection, however, Petitioner filed a third Notice of Appeal, *see* USCA Case No. 23-1760, seeking to appeal "from the Judgment of the Court denying the petition for writ of habeas corpus and dismissing with prejudice" entered on "May 19, 2023 by Honorable Karen S. Crawford, U.S. District Judge." *See* Doc. No. 33 ("Third Appeal"). Petitioner simultaneously filed a motion to proceed IFP. *See* Doc. No. 34.

On August 17, 2023, the Court denied Petitioner's motion to proceed IFP. *See* Doc. No. 36. The Court explained that "Judge Crawford's May 19, 2023 Report and Recommendation is not a judgment or otherwise final or appealable order. The Court has not yet ruled on Judge Crawford's Report and Recommendation or the Petition. As such, the Court has not determined whether a certificate of appealability should ultimately issue." *Id.* at 2. The Court also found that while it was not clear whether Petitioner wished to obtain IFP status in this Court or on appeal, he was not entitled to such relief. *See id.* As of the date of this Order, the Ninth Circuit has not issued any dispositive orders on the Third Appeal.

## II. LEGAL STANDARD

A district court has jurisdiction to review a magistrate judge's report and recommendation on dispositive matters. *See* Fed. R. Civ. P. 72(b). Pursuant to Rule 72 and 28 U.S.C. § 636(b)(1), the Court must make a *de novo* determination of any part of the magistrate judge's disposition to which a party has properly objected. *See id.*; *see also United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc) (explaining that pursuant to Rule 72, "a party may serve and file specific written objections to the proposed findings and recommendations" of a Magistrate Judge). The Court "may accept, reject, or modify, in whole or in part, the findings or

recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1); *see also United States v. Remsing*, 874 F.2d 614, 617 (9th Cir. 1989).  In the absence of timely objections, the Court "need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Fed. R. Civ. P. 72(b) advisory committee's note to 1983 amendment (citing *Campbell v. U.S. Dist. Ct.*, 501 F.2d 196, 206 (9th Cir. 1974)); *Reyna-Tapia*, 328 F.3d at 1121.

### III. JURISDICTION PENDING APPEAL

The Court must first address the Third Appeal.  As noted above, Plaintiff has filed a Notice of Appeal, seeking to appeal from Judge Crawford's R&R.  The R&R is not a final or otherwise appealable order.  *See Serine v. Peterson*, 989 F.2d 371, 372 (9th Cir. 1993) (holding that the findings and recommendation of a magistrate judge are not appealable until adopted by the district court).  Therefore, Petitioner's Third Appeal is premature.  A premature appeal does not divest the district court of its jurisdiction to issue a subsequent final and appealable judgment.  *Martinez v. Barr*, 941 F.3d 907, 916 (9th Cir. 2019).  Accordingly, although the Third Appeal is still pending, the Court is not deprived of jurisdiction to rule on the R&R and enter judgment.

### IV. DISCUSSION

A federal court may entertain a habeas petition from a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).  Under the Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996, a district court may not grant habeas relief unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 412 (2000). "[T]he *only* definitive source of clearly established federal law under AEDPA is the holdings (as opposed to the dicta) of the Supreme Court as of the time of the state court

decision." *Hedlund v. Ryan*, 854 F.3d 557, 565 (9th Cir. 2017) (quoting *Clark v. Murphy*, 331 F.3d 1062, 1069 (9th Cir. 2003), *overruled on other grounds by Lockyer v. Andrade*, 538 U.S. 63, 71 (2003)).

Judge Crawford recommends that the Court find that Petitioner fails to raise a colorable claim that his constitutional rights were violated and therefore deny the Petition. *See* R&R at 9.[5] Petitioner has not filed an objection the R&R. "The statute makes it clear that the district judge must review the magistrate judge's findings and recommendations de novo *if objection is made*, but not otherwise." *Reyna-Tapia*, 328 F.3d at 1121 (emphasis in original); *see also* 28 U.S.C. § 636(b)(1). "Neither the Constitution nor the statute requires a district judge to review, de novo, findings and recommendations that the parties themselves accept as correct." *Id.*

Here, however, it appears that Petitioner does not accept Judge Crawford's recommendation. *See* Third Appeal. While Petitioner's Third Appeal indicates he takes general exception to the R&R, he does not identify any errors. "Numerous courts have held that a general objection to the entirety of a Magistrate Judge's R&R has the same effect as a failure to object." *Alcantara v. McEwen*, No. 12-CV-401 - IEG (DHB), 2013 U.S. Dist. LEXIS 116055, at *3–4 (S.D. Cal. Aug. 14, 2013) (collecting cases). Nonetheless, because Petitioner is proceeding *pro se*, and in an abundance of caution, the Court has conducted a *de novo* review and similarly finds that the Petition must be denied.

A.   **Factual Background**

As Judge Crawford noted, Petitioner has made no effort to rebut the presumption that the state court's findings of fact are correct. Therefore, the Court similarly accepts the factual background as described in the Court of Appeal decision. *See* Doc. Nos. 12-

---

[5] Unless otherwise noted, all citations to electronically filed documents refer to the pagination assigned by the CM/ECF system.

21, 12-23.[6] Petitioner sexually abused his ex-girlfriend's two daughters and physically abused her son for a period of several years beginning in 2012 until his relationship with the victims' mother ended in December 2015. *See* COA Dec. at 2–4; Am. Dec. at 1–2. In 2016, the children were removed from their mother's custody after the daughters disclosed the sexual abuse to social workers. *See* COA Dec. at 4. In 2017, the San Diego District Attorney charged petitioner with eight (8) counts of lewd acts on a child under the age of 14, one (1) count of corporal injury on a child, and one (1) count of oral copulation/sexual penetration with a child 10 years old or younger. *Id.* at 4. Counts 1 through 8 included allegations that the sexual conduct was substantial and was committed against more than one victim. *See id.* at 4–5.

All three of the victims testified against Petitioner at trial, describing the abuse in detail. *See id.* at 5. Petitioner's ex-girlfriend also testified, along with several social workers, teachers, and a clinical psychologist. *Id.* at 5–6. Petitioner testified and denied the allegations. *Id.* at 6.

The jury convicted Petitioner on all counts and found true all allegations. *Id.* Petitioner directly appealed his conviction to the California Court of Appeal, which affirmed the judgment on May 18, 2020. *See* COA Dec. The Court of Appeal later denied rehearing but made non-substantive changes to the opinion without altering the judgment. *See* Am. Dec. The California Supreme Court denied review without comment on August 12, 2020. *See* Doc. No. 12-25.

**B.     Analysis**

Petitioner raises four grounds in support of his Petition: (1) he was denied his constitutional right to an impartial and unbiased jury based upon the trial court's decision to retain a juror over objection; (2) he was denied his right to due process and trial by jury

---

[6] The Court of Appeal decision, *see* Doc. No. 12-21, was subsequently amended, *see* Doc. No. 12-23. The Court hereinafter cites to the original decision as ("COA Dec.") and the amended decision as ("Am. Dec."), and refers to the decisions' original page numbers.

when a juror was discharged over objection from defense counsel; (3) he was denied his due process rights and right to an impartial jury when the trial court declined to declare a mistrial; and (4) he was denied his due process rights and right to a properly instructed jury. The Court addresses each claim in turn.

    1.    *Claim One: Juror 11 Bias*

First, Petitioner claims he was denied his constitutional right to an impartial and unbiased jury. *See* Petition at 6. Petitioner alleges Juror 11 wore a "Voices for Children" shirt on the fourth day of his trial. *See id.* Voices for Children is a non-profit organization that operates the Court Appointed Special Advocates ("CASA") program in the San Diego Superior Court. *Id.* CASAs "are specially trained volunteers who advocate for children who have come into the foster care system due to abuse or neglect." *Id.* The three victims in Petitioner's case had all been placed into foster care due to abuse and neglect. *Id.* Petitioner contends that Juror 11's choice to wear a Voices for Children shirt is indicative of bias because Petitioner was on trial for sexually and physically abusing children. *Id.* Petitioner challenges the trial court's denial of his motion to excuse Juror 11, which was affirmed on appeal. COA Dec. at 13.

The Sixth Amendment guarantees a criminal defendant a fair trial. U.S. Const. amend. VI. "One touchstone of a fair trial is an impartial trier of fact – 'a jury capable and willing to decide the case solely on the evidence before it.'" *McDonough Power Equip. v. Greenwood*, 464 U.S. 548, 554 (1984) (quoting *Smith v. Phillips*, 455 U.S. 209, 217 (1982)). "Even if only one juror is unduly biased or prejudiced, the defendant is denied his constitutional right to an impartial jury." *Tinsley v. Borg*, 895 F.2d 520, 523–24 (9th Cir. 1990) (internal quotations omitted). However, the Constitution "does not require a new trial every time a juror has been placed in a potentially compromising situation." *Smith*, 455 U.S. at 217. "The safeguards of juror impartiality, such as *voir dire* and protective instructions from the trial judge, are not infallible; it is virtually impossible to shield jurors from every contact or influence that might theoretically affect their vote." *Id.*

Regarding Juror 11, the Court of Appeal summarized the matter as follows:

> Juror No. 11 stated during voir dire that his wife volunteers as a CASA—a Court Appointed Special Advocate. CASAs work on behalf of children who have suffered abuse or neglect. (Wel. & Inst. Code, §§ 102–103.) In San Diego, the nonprofit organization Voices for Children manages the CASA program. (In re Samuel G. (2009) 174 Cal.App.4th 502, 507, fn 2.) Before he was seated, Juror No. 11 said he could be a fair and impartial juror. On the fourth day of evidence, he wore a Voices for Children shirt. Juror No. 4 was familiar with the organization and sent a note to the court expressing concern that someone affiliated with CASA may not be impartial in a case like this. After discussing the note with the parties, the court spoke to both jurors.
>
> Juror No. 4 was not aware that Juror No. 11 had advised the court of his connection to the CASA program during voir dire. He told the court he had not spoken with Juror No. 11 about the shirt, and the incident would have no effect on his ability to deliberate.
>
> When the court questioned Juror No. 11 about the shirt, he referenced his earlier explanation during voir dire. The court recalled the juror's statement that his wife's work with CASA "wouldn't affect you either way, correct?" and the juror answered that was correct. Then the prosecutor asked if his ability to be fair had "changed at all based on the shirt you're wearing and what your wife does," to which Juror No. 11 replied, "It has not changed my ability to be fair and impartial." Later, the court considered and denied the defense's motion to excuse Juror No. 11, explaining, "I don't see any change that would show bias on Juror No. 11's part. He was up front from the beginning. It wasn't a good idea to wear the [shirt], but I don't think it is really demonstrative of bias."

COA Dec. at 12.

The record reflects that Juror 11 repeatedly indicated he could be impartial, Doc. No. 12-11 at 1624–25;[7] Doc. No. 12-16 at 99, and that he truthfully disclosed his wife's affiliation with CASA during voir dire, *see* Doc. No. 12-16 at 61. The trial court inquired into the issue by discussing the matter with Jurors 4 and 11, and both the prosecution and

---

[7] All citations to the state court trial transcripts reference the pagination assigned by the court reporter.

defense counsel questioned Juror 11, *see* Doc. No. 12-11 at 1622–26.  The trial court also heard from counsel on the matter at which time defense counsel had the opportunity to prove actual bias. *See id.* at 1705–07.  Ultimately, the trial court found that the decision to wear the Voices for Children shirt one day was not demonstrative of bias; that Juror's 11's decision to do so did not outweigh his honesty, the fact that he had been forthcoming about his wife's affiliation with CASA, and his repeated insistence he could be impartial. *See* COA Dec. at 11.  The Court of Appeal found that the trial court conducted an appropriate inquiry into the issue and that the conclusion was proper in light of the evidence. *See id.* at 13.  Petitioner may disagree with that outcome.  However, he has not shown that this determination was unreasonable in light of the evidence, or contrary to or an unreasonable application of federal law.  *See Smith*, 455 U.S. at 217 ("Due process means a jury capable and willing to decide the case solely on the evidence before it, and a trial judge ever watchful to prevent prejudicial occurrences and to determine the effect of such occurrences when they happen. Such determinations may properly be made at a hearing like that ordered in *Remmer* . . . .").  Accordingly, Petitioner is not entitled to habeas relief on this basis.

        2.     *Claim Two: Juror 10 Dismissal*

Second, Petitioner challenges the trial court's dismissal of Juror 10, asserting the trial court's removal was without good cause and thus in violation his due process rights and right to a trial by jury. *See* Petition at 7.  According to Petitioner, Juror 10 was removed for "being unavailable for about three hours of trial, based on a stale voice mail message.  Nothing in the record established the juror was unable to return the next day and continue to perform his duties, and the trial court took no steps to determine same." *Id.*

The Sixth Amendment guarantees a criminal defendant the right to a trial by jury. U.S. Const. amend. VI.  Section 1089 of the California Penal Code governs the discharge and substitution of jurors in California criminal cases.  It allows a trial court to discharge a juror who dies, becomes ill, or upon good cause shown is unable to perform his or her

duty. Cal. Penal Code § 1089. Section 1089 is facially constitutional because it "preserve[s] the 'essential feature' of the jury required by the Sixth and Fourteenth Amendments." *Miller v. Stagner*, 757 F.2d 988, 995 (9th Cir. 1985).

The Court of Appeal explained:

> Midway through the trial, Juror No. 10 left an evening voicemail explaining he could not come to court the following day because a plumbing issue in his neighbor's apartment caused a flood in his bathroom. The following day, the trial court discussed the situation with counsel and, over a defense objection, replaced Juror No. 10 with an alternate. The clinical psychologist was scheduled to testify that afternoon and was unavailable for the rest of the week.

COA Dec. at 13. The Court of Appeal agreed that Juror 10's personal emergency rendered him unable to fulfill his duties for a significant portion of the trial and that this constituted good cause for dismissal. *See id.* at 13–14. The record supports this determination: Juror 10 left a voicemail message with the trial court indicating that his bathroom had flooded and that he would not be present the next day. Doc. No. 12-9 at 1104. Juror 10 was not present the following day, which was the day the prosecution's expert witness was scheduled to testify. *Id.* at 1105. This witness was not available for the rest of the week. *Id.* This is not an "unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). As such, Petitioner is not entitled to habeas relief on this ground.

3. *Claim Three: Ex-Girlfriend Testimony*

Third, Petitioner challenges the state court's handling of his ex-girlfriend's testimony. *See* Petition at 8. The Court of Appeal summarized:

> Mother testified for the prosecution as their first witness. The day before trial was set to begin, the prosecutor received new information that Mother volunteered to investigators picking her up on a warrant. She told them she was in contact with another person who was molested by Nevarez as a child, showed them a purportedly incriminating Facebook message Nevarez sent her, and recounted a conversation they had before she left Warner Springs

> where he "admitted to her that he had sexually abused the children." The prosecutor turned the statement over to defense counsel the same day she received it. The morning the trial began, the parties discussed this new development with the court. The defense moved to exclude the Facebook message, any mention of an additional victim, and Nevarez's admission to Mother that he sexually abused the girls. The prosecutor did not oppose the motion; she did not intend to elicit any of the new evidence from Mother, who had already been advised not to bring it up in her testimony. The court granted the motion.
>
> During her testimony, Mother was asked if she knew in 2016 about any sexual abuse involving the girls. She said yes. The prosecutor then asked, "How did you find out about it?" to which she replied, "Ruben told me himself." The defense objected. At sidebar the parties noted this information was excluded by the court's in limine ruling. The prosecutor was expecting a different response because Mother testified earlier that she knew about the abuse from her daughter. The court denied the defense's motion for a mistrial but did strike the answer and admonish the jury to disregard it. Mother then testified her daughter told her about the abuse.

COA Dec. at 6–7.

Petitioner argues that the victims had motive to lie, that it is reasonable to infer his ex-girlfriend intentionally disclosed the excluded admission in order to prejudice the jury, and that because the prejudice could not be cured by instruction, a mistrial was proper. Petition at 8.

However, the Court of Appeal determined upon review of the record that Petitioner was not incurably prejudiced by reference to the excluded admission. COA Dec. at 8. The Court of Appeal summarized the direct and corroborating evidence of guilt and that "in a case that hinged on whether the jury believed Nevarez or the children," *id.* at 9, "[t]he jury believed the children." *Id.* at 10. The Court of Appeal applied the harmless error rule to assess prejudice and found that a more favorable result was not reasonably probable absent Petitioner's ex-girlfriend's statement. *Id.* This was not an unreasonable determination of the facts in light of the evidence presented at trial.

Petitioner cites to *Arizona v. Fulminante*, 499 U.S. 279 (1991), in support of his claim that he was entitled to a mistrial. It may be true that "the defendant's own

confession is probably the most probative and damaging evidence that can be admitted against him." *Id.* at 296. However, the *Fulminante* case dealt with the erroneous admission of a coerced confession into evidence. *Id.* at 302. Here, as the Court of Appeal explained, the admission Petitioner made to his ex-girlfriend "was not extracted from him unlawfully; the comment may well have been admitted into evidence under other circumstances. Nevarez's statement is distinct from confessions made inadmissible by a constitutional violation." COA Dec. at 10. The Court of Appeal also noted that the trial court's decision to exclude the statement was based more on the prosecution's non-opposition than the merits of Petitioner's motion in limine. *Id.* at 6, 7 fn.4. This determination is not unreasonable in light of the evidence. Nor is it contrary to or an unreasonable application of clearly established federal law. Accordingly, Petitioner is not entitled to habeas relief on this basis.

        4.      *Claim Four: Jury Instruction*

Finally, Petitioner asserts that he was denied due process and the right to a properly instructed jury when the trial court failed to instruct the jury on the parental right to punish a child. *See* Petition at 9. According to Petitioner, "[t]he defense theory of the case was that petitioner took on the role of father figure to these children because there was no parent to take care of them . . . and there was substantial evidence that any corporal punishment involving the son had a disciplinary animus." *Id.* Thus, according to Petitioner, the jury should have "been given an instruction such as CALCRIM No. 3405 regarding a parent's right to discipline by corporal punishment, in order for the jury to properly evaluate whether the alleged conduct involving the son amounted to justifiable punishment." *Id.*

However, according to the Court of Appeal,

> Clearly, Nevarez did not rely on the defense of parental discipline. More importantly, a theory of appropriate discipline would contradict his express representations that he never used corporal punishment on the children. Nevarez explained that because he was "not their father" he "couldn't touch

> them." He said he disciplined them by putting them in a corner, grounding them, taking a toy away, or restricting TV. He also testified their mother would spank and hit the children, implying that any discipline-related injuries they suffered were not by his hand. He cannot now assert the trial court was responsible to instruct on a theory he explicitly disavowed.

COA Dec. at 14–15. This determination is not an unreasonable in light of the evidence: Petitioner testified that he never put his hands on his ex-girlfriend's son. Doc. No. 12-12 at 1743:16–25. And the Court of Appeal's determination that the trial court did not err in sua sponte instructing the jury on a theory inconsistent with Petitioner's defense is not contrary to or an unreasonable application of federal law. Therefore, Petitioner is not entitled to habeas relief on this ground.

## V. Certificate of Appealability

A petitioner may not appeal "the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court" except where "a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). The federal rules governing habeas cases brought by state prisoners require a district court that dismisses or denies a habeas petition to grant or deny a certificate of appealability in its ruling. *See* Rule 11(a), Rules Governing § 2254 Cases, 28 U.S.C. foll. § 2254. A certificate of appealability is not issued unless there is "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Under this standard, a petitioner must show that reasonable jurists could debate whether the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further. *Miller–El v. Cockrell*, 537 U.S. 322, 336 (2003) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). For the reasons set forth in the R&R as well as this Order, the Court finds that this standard has not been met and therefore **DECLINES** to issue a certificate of appealability.

## VI. Conclusion

Based upon the foregoing, the Court finds that Petitioner is not entitled to habeas relief. Accordingly, the Court **ADOPTS** the R&R in its entirety, **DENIES** the Petition,

and **DECLINES** to issue a certificate of appealability. The Court **DIRECTS** the Clerk of Court to send a copy of this Order to the United States Court of Appeals for the Ninth Circuit, enter judgment accordingly, and close this case.

**IT IS SO ORDERED**.

Dated:  September 1, 2023

HON. MICHAEL M. ANELLO
United States District Judge